## JAMES E. MARTYN vs. GEORGE O. HITCHINGS.

Suffolk.     March 20, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Contract*, Construction.  *Option*.  *Words*, "Option."

In a suit in equity to enforce specifically an alleged agreement to purchase certain
bonds from the plaintiff the following facts appeared by the bill, to which the
defendant demurred: The plaintiff on January 1 of a certain year delivered to
the defendant an agreement of option and the defendant acknowledged in writ-
ing at the foot of the agreement its delivery to him on that day.  By this instru-
ment the plaintiff agreed to sell the defendant on or before February 10 of that
year $700,000 of the bonds in question on being paid a price named, and agreed
"in case this option is accepted" to endeavor to procure $50,000 more of the
same bonds for delivery at the same price.   The agreement recited that in addi-
tion to the $750,000 of the bonds mentioned above there were $59,000 of the
bonds pledged for the debts of the corporation that issued them, and the plain-
tiff agreed "in case this option is accepted" to sell to the defendant these bonds
also at the same price.   There also were other outstanding bonds which the
plaintiff agreed to help the defendant to procure "in case this option is ac-
cepted" and the plaintiff also agreed "in case this option is taken up" to sell
to the defendant certain shares of the corporation which issued the bonds at
certain prices named.   After these provisions came the following: "It is also
hereby expressly understood that" the defendant "is to purchase upon accept-
ing this option $20,000 of said bonds out of said above mentioned lot of $59,000"
at the price named, the "proceeds of said sale to be applied to the payment of
certain debts of" the corporation.   There was another agreement made between
the plaintiff and the defendant of the same date as the agreement of option relat-
ing to the coupons of the bonds named in that agreement which among other
things made a provision for the coupons of the lot of $59,000 of the bonds which
was conditional on the exercise of the option by the defendant.   Shortly after
January 1 and before February 10 the defendant paid to the plaintiff at his
request $100 to be applied toward one of the debts of the corporation in ques-
tion.   The defendant allowed the time to expire without exercising his option
and refused to buy any of the bonds.   The plaintiff contended that the defend-
ant had agreed in any case to buy $20,000 of the bonds upon accepting the
instrument of option.  *Held*, that the words "upon accepting this option" in
the clause relating to the $20,000 of bonds meant the exercise by the defendant
of the option to purchase $700,000 of the bonds and not the acceptance of the
agreement of option, having the same meaning as the corresponding words in
the other parts of the agreement, that the payment of $100 by the defendant at
the plaintiff's request as a part of the purchase money for the bonds was not an
exercise of the option and did not bind the defendant to purchase the bonds,
that the conduct of the parties in doing nothing about the $20,000 of bonds
when the agreement of option was delivered tended to support the construction
of the contract adopted by the court, and that the bill should be dismissed.

BILL IN EQUITY, filed March 12, 1903, and amended June 6, 1904, and June 26, 1905, to enforce specifically an agreement in writing annexed to the bill as Exhibits A. and B. and printed below by compelling the defendant to purchase from the plaintiff $20,000 of the bonds of the Rio Grande Irrigation and Colonization Company.

The defendant demurred to the bill before its amendment alleging as causes of demurrer want of equity and that there was no memorandum in writing of the contract signed by the party to be charged as required by R. L. c. 74, § 5. The case was heard by *Fessenden*, J., who sustained the demurrer. The plaintiff appealed, and afterwards was allowed to amend his bill by adding the following paragraph:

"That afterwards, shortly after January 1, 1903, and before February 10, 1903, the defendant acknowledged his obligation under said agreements or options by paying to the said Martyn or at his request the sum of $100 to be applied towards one of the certain debts of the said Rio Grande Company mentioned in said agreements or options; that the plaintiff has ever been ready and willing to sell, transfer and deliver said bonds mentioned in said seventh paragraph to the defendant upon his paying the balance of the purchase price thereof, and has been ready to apply the proceeds to the payment of said certain debts of the Rio Grande Irrigation and Colonization Company but the defendant, though often requested so to do and though a reasonable time thereafter has already elapsed, has not completed said purchase by taking said bonds and paying for the same, and still refuses to take said bonds and pay the balance of the purchase price thereof as agreed."

The defendant demurred to the bill as amended alleging the same causes.

The case was heard by *Richardson*, J., who sustained the demurrer. Thereafter the plaintiff was allowed further to amend his bill by adding after the "$100" in the paragraph above quoted the words "as a part of said purchase price of the $20,000 of bonds mentioned in clause seventh of Exhibit A. said $100."

It was agreed by the parties that the defendant's last demurrer should apply to the bill as finally amended. *Richardson*, J. made

an order overruling the demurrer to the bill as finally amended, and the defendant appealed.

The judge, being of the opinion that the questions raised by the demurrer so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by this court, at the request of the parties reported the case for such determination. If the demurrer to the bill as finally amended was rightly overruled the defendant was either to plead or answer; otherwise, the bill was to be dismissed.

Exhibits A. and B. containing the alleged contract sought to be enforced were as follows:

## "Exhibit A.

" I, James E. Martyn of Boston in the County of Suffolk and Commonwealth of Massachusetts, as I am the holder as Trustee of certain First Mortgage Five Per Cent Gold Bonds of the Rio Grande Irrigation and Colonization Company, and am the holder as Trustee of certain stock of said Company, in consideration of one dollar and other good and valuable considerations to me paid by George O. Hitchings of said Boston, the receipt whereof is hereby acknowledged, do hereby give, grant and assign to said George O. Hitchings, the following option namely, —

" First.  The right to purchase from me as such trustee said bonds to the amount of seven hundred thousand dollars ($700,000) face value, the price to be paid therefor to be seventy (70) per cent of their face value with accrued interest from January first, 1903.  I also hereby agree that in case this option is accepted by said Hitchings, as hereinafter provided, I will use my utmost endeavors to procure the sale and delivery to him of fifty thousand dollars ($50,000) of said bonds or such part thereof as I can obtain control of, the price to be paid therefor to be seventy (70) per cent of the face value thereof with accrued interest from January first, 1903.  Payment for said lots of seven hundred thousand dollars ($700,000) bonds and fifty thousand dollars ($50,000) bonds to be made in three (3) instalments, one-third of said purchase price to be paid in twelve months from January first 1903, one-third in eighteen months from said date, and the last third in twenty-four months from said date.

" Second. And for the consideration aforesaid I hereby agree that in case this option is taken up as hereinafter provided, that I will sell to said George O. Hitchings all or any part of twenty-eight thousand five hundred (28,500) shares of the capital stock of said Rio Grande Company for the price of ten dollars ($10) per share, payment for such shares to be made thirty (30) months after January first 1903, and I will also sell to said George O. Hitchings in addition to said twenty-eight thousand five hundred (28,500) shares, forty-five hundred (4500) shares of said stock at two dollars ($2) per share, also payable thirty (30) months after January first 1903.

" Third. And whereas, in addition to said seven hundred and fifty thousand dollars ($750,000) bonds, there are certain other bonds of said Rio Grande Company, of the total face value of fifty-nine thousand dollars ($59,000), which bonds are pledged as security for certain debts of said Rio Grande Company, which said debts do not exceed fifty thousand dollars ($50,000).

" Now, for the consideration aforesaid, I hereby covenant and agree that in case this option is accepted by said Hitchings, as hereinafter provided, I will sell to him fifty-nine thousand dollars ($59,000) bonds, the price to be paid therefor to be seventy (70) per cent of the face value and accrued interest thereof.

" Fourth. And whereas, in addition to said above mentioned lots of bonds, there are one hundred and eighty-seven thousand dollars ($187,000) of said bonds outstanding held by various parties.

" Now, for the consideration aforesaid, I hereby covenant and agree that in case this option is accepted by said Hitchings I will use all reasonable efforts to help him get in said one hundred and eighty-seven thousand dollars ($187,000) bonds, said Hitchings to have the right to sell such part of said one hundred and eighty-seven thousand dollars ($187,000) bonds together with any coupons due and unpaid thereon, to reimburse himself for the expenses by him or on his behalf incurred in getting in said one hundred and eighty-seven thousand dollars ($187,000) bonds. It being provided that upon reimbursement for such expenses said Hitchings shall deposit the balance (as said Hitchings gets in such balance) of said one hundred and eighty-seven thousand dollars ($187,000) in escrow with the American Loan and Trust

Company upon the condition that said American Loan and Trust Company shall not allow the same to be sold until all the bonds taken by said Hitchings under this option shall have been paid for.

"Fifth. And for the consideration aforesaid I hereby give to said Hitchings the right to purchase treasury bonds of said company to the amount of three hundred thousand dollars ($300,000) the price to be paid therefor to be seventy (70) per cent of their face value and accrued interest, and I hereby agree to give said George O. Hitchings three thousand shares of the treasury stock of said Rio Grande Company as a bonus with said bonds, provided that if said Hitchings shall take only a portion of said three hundred thousand dollars ($300,000) bonds upon the above terms, that the number of shares so to be given to him as a bonus shall bear the same proportion to said three thousand (3000) shares as the number of said bonds so taken shall bear to the whole three hundred thousand dollars ($300,000) of said bonds.

"Sixth. And for the consideration aforesaid I hereby give said Hitchings the right to buy the balance of the treasury bonds of said Rio Grande Company at the rate of ninety (90) per cent of the face value and accrued interest thereof.

"Seventh. It is also hereby expressly understood that said Hitchings is to purchase upon accepting this option twenty thousand dollars ($20,000) of said bonds out of said above mentioned lot of fifty-nine thousand dollars ($59,000) the purchase price to be seventy (70) per cent of the face value thereof, proceeds of said sale to be applied to the payment of certain debts of said Rio Grande Company.

"Eighth. It is understood hereunder that said Hitchings is to use his best endeavors to anticipate all payments for bonds and stock under this option.

"Ninth. This option is to remain open through February tenth 1903.

"In witness whereof I hereunto set my hand and seal this first day of January 1903.

"Jas. E. Martyn.    (Seal.)

"The foregoing option is a true copy of one delivered to me today.

"George O. Hitchings."

"Exhibit B.

"Whereas I, James E. Martyn of Boston in the County of Suffolk and Commonwealth of Massachusetts, have this day given a certain option upon certain stock and bonds of the Rio Grande Irrigation and Colonization Company to George O. Hitchings of said Boston; and

"Whereas there are annexed to the lots of seven hundred thousand dollars ($700,000) bonds and fifty thousand dollars ($50,000) bonds, mentioned in said option, coupons due and unpaid for three years last past; and

"Whereas upon the lots of fifty-nine thousand dollars ($59,000) bonds there are coupons due and unpaid for several years, —

"Now therefore in consideration of one dollar and other good and valuable considerations paid by said George O. Hitchings, the receipt whereof is hereby acknowledged, I hereby give, grant and assign to said George O. Hitchings, the following option namely : —

"Upon the purchase by said Hitchings of any or all of the above mentioned bonds I hereby agree to fund the coupons of any or all bonds so purchased at the face value of said coupons by turning over therefor to said Hitchings treasury bonds of said Rio Grande Company, upon the following terms: Any bonds so turned over for coupons annexed to bonds of the seven hundred thousand dollars ($700,000) and fifty thousand dollars ($50,000) above mentioned to be sold for seventy (70) per cent of their face value, payment to be made, one third in twelve months from January first 1903, one third in eighteen months from said date and the last third in twenty four months from said date; any bond turned over for coupons annexed to said lot of fifty-nine thousand dollars ($59,000) to be sold at seventy (70) per cent of their face value.

"This option is to remain open through February tenth 1903.

"In witness whereof I hereunto set my hand and seal this first day of January 1903.

"Jas. E. Martyn.   (Seal)

"The foregoing option is a true copy of one delivered to me today.

"George O. Hitchings."

*H. N. Berry,* (*H. LeB. Sampson* with him,) for the defendant.
*H. R. Bailey,* for the plaintiff.

KNOWLTON, C. J.    The rights of the parties in this case depend upon the meaning of the contract contained in the two papers signed by the plaintiff and delivered to the defendant, bearing date January 1, 1903.    The second of these papers relates to coupons annexed to bonds referred to in the first paper, and it was to have effect only upon condition that the defendant exercised the option to buy bonds given him in the first paper. It is therefore of but little consequence as an aid in the construction of the first contract.

The contract contained in the first paper is the giving of an option by the plaintiff to the defendant, to remain open through February 10, 1903, which option was "the right to purchase", from the plaintiff as trustee, certain bonds to the amount of $700,000, face value, at the price of seventy per cent of their par value, with accrued interest after the date of the contract.    In the first clause of the contract the plaintiff also agrees "that in case this option is accepted by said Hitchings, as hereinafter provided," he will endeavor to procure the sale and delivery of $50,000 more of the same kind of bonds, or such part thereof as he can obtain control of, at the same price.    In the second clause, "in case this option is taken up as hereinafter provided," he makes an agreement to sell at a certain price stock of the company that issued the bonds.    In the third clause there is an agreement of the plaintiff to sell certain other bonds of the same kind, at the same price, "in case this option is accepted by said Hitchings, as hereinafter provided."    Plainly, the option referred to in each of these clauses is the right to buy the bonds to the amount of $700,000, face value, referred to in the first clause, and "accepted . . . as hereinafter provided," means accepted within the time that the option is to remain open under the ninth clause, which is through February 10.

The fourth clause contains an agreement of the plaintiff to use all reasonable effort to help the defendant get $187,000 more of the same bonds then outstanding in the hands of various parties, and this agreement is only "in case this option is accepted by said Hitchings."    The option referred to here is the same.

The fifth and sixth clauses give the defendant the right to

buy certain treasury bonds of the same kind, with certain treasury stock, at prices stated.

The seventh clause, upon which the plaintiff founds his suit, is as follows: " It is also expressly understood that said Hitchings is to purchase upon accepting this option $20,000 of said bonds out of said above mentioned lot of $59,000 the purchase price to be seventy per cent of the face value thereof, proceeds of said sale to be applied to the payment of certain debts of said Rio Grande Company." The lot of $59,000 is the one referred to in the third clause of the contract.

The contention of the plaintiff is that the words " upon accepting this option ", in the seventh clause, mean upon the delivery and acceptance of the writing, which purports to give an option to be exercised on or before February 10. He contends that the obligation of the defendant to purchase bonds to the amount of $20,000 became absolute immediately on the delivery and acceptance of the paper. He thus gives the words " this option ", in this clause, a meaning different from their obvious meaning in every other part of the contract. The bill as originally drawn was plainly founded on this construction of the contract, and the two amendments do not change it in this particular.

The defendant, on the other hand, contends that accepting this option, in the seventh clause, means the same thing as the similar language in the first, second, third and fourth clauses of the contract, namely, the election to purchase $700,000 of bonds, upon which everything else is made to depend. The third clause, in which the words are plainly used in that sense, refers to the sale of the same lot of bonds which are to be purchased under the seventh clause if the option is accepted. In the ninth clause the word " option " has the same meaning. Looking for a moment at the second writing, the plaintiff's agreement in reference to the coupons upon this lot of $59,000 is made conditional upon the purchase of the bonds by the defendant. This is inconsistent with the existence of a contract of purchase which was absolute the moment that the writing was delivered and accepted.

While the case is not free from difficulty, we are of opinion that the construction contended for by the plaintiff is not correct. It seems a strained and unnatural view to hold that the words " this option ", in the seventh clause, mean a paper writing,

while in every other part of the instrument they mean the right to purchase certain specified property within a stated time at a stated price.

The averments in the amendments to the bill have little bearing upon this point. They are intended to relieve from the defence of the statute of frauds, and to show how the parties interpreted the contract. In the view that we take of the case the statute of frauds becomes immaterial. A payment of $100 by the defendant to the plaintiff, or at his request, as a part of the purchase price of the bonds referred to in the seventh clause, made at some time after January 1, 1903, and before February 10, 1903, does not bind the defendant to purchase these bonds, if he elected not to accept the option. This is conceded by the plaintiff upon the interpretation which we give to the word "option." The plaintiff relies upon the averment as showing the defendant's construction of the contract; but if the contract means what the plaintiff contends that it means, the defendant should have taken and paid for bonds to the amount of $20,000 on the delivery of the paper. The conduct of the parties, taken as a whole, tends to support the defendant's rather than the plaintiff's construction of the contract.

*Bill dismissed.*